# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DWAYNE R. MCCONNELL and PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No: S22C-04-002 MHC |
| SHEQUITA TRUITT, Individually and as Administrator of the ESTATE OF G.M.T., a minor, JEREMIE HANDY, and BRYAN WINDER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Submitted: December 12, 2023
Decided: January 29, 2024

Daniel P. Bennett, Mintzer Sarowitz Zeris Ledva & Meyers, Wilmington, Delaware, *Attorney for Plaintiffs.*

James Meehan, Shelsby & Leoni, Wilmington, Delaware, *Attorney for Defendants Shequita Truitt, individually and as Administrator of the Estate of G.M.T.*

Tasha M. Stevens-Gueh, Andrew & Stevens-Gueh, LLC, Georgetown, Delaware, *Attorney for Defendant Jermaine Handy.*

Jeffery A. Young, Young & McNelis, Dover, Delaware, *Attorney for Defendant Bryan Winder.*

**CONNER, J.**

## I. FACTUAL AND PROCEDURAL HISTORY

On April 12th, 2018, nine-year old G.M.T. was struck by a vehicle operated by Dwayne R. McConnell, Jr. ("McConnell") on German Road, Seaford, DE 19973. G.M.T. died two days later on April 14th, 2018, as a result of the accident. Progressive Northern Insurance Company ("Progressive") insured McConnell through a personal automobile policy with a $25,000 per person limit. McConnell and Progressive are collectively "Plaintiffs."

On March 24th, 2020, G.M.T.'s biological mother, Shequita Truitt ("Truitt"), brought an action in New Castle County against several defendants, including McConnell, on behalf of herself and G.M.T.'s Estate (the "Estate"). On March 27th, 2020, G.M.T.'s biological father, Jeremie Handy ("Handy"), filed a wrongful death action in Sussex County against several defendants, including McConnell, on behalf of himself. On December 13th, 2022, the parties stipulated to consolidate both matters for discovery and trial in Sussex County under C.A. No. S20C-03-039 ("Underlying Action").

Truitt made a demand on Progressive to tender its policy limit of $25,000 on December 13th, 2021. Progressive agreed to tender the limit contingent on Truitt and Handy reaching an agreement as to how the funds should be apportioned. No such agreement was reached. Plaintiffs filed the present interpleader action on April 4th,

2022, against Truitt, individually and as the Administrator of the Estate of G.M.T., Handy, and Bryan Winder.[1]

This Court issued an Order for Interpleader on August 12th, 2022.[2] The Court ordered: (1) Progressive to tender the policy limit of $25,000 to the Prothonotary of this Court; (2) the release of Progressive, but not McConnell, from any and all further claims and liability arising out of the April 12th, 2018, accident by reason of the payment of the proceeds of the policy; (3) the injured Defendant's to settle amongst themselves their rights and claims to the $25,000 policy limit tendered by Progressive to the Prothonotary.[3]

Shortly thereafter, the policy limit of $25,000 was tendered by Progressive to the Prothonotary. Unsurprisingly, Truitt and Handy could not agree to an apportionment of the funds between themselves and the Estate. Attempts at mediation failed and on November 6th, 2023, a bench trial was held. The purpose of the trial was for the Court to determine how to divide the $25,000 between Truitt, Handy, and the Estate.

---

[1] Bryan Winder was allegedly responsible for G.M.T. at the time she was struck. He takes no position on the allocation of the funds and is not relevant in this Order.
[2] *McConnell v. Truitt*, Del. Super., C.A. No. 22C-04-002, Conner, J. (April 12th, 2022) (ORDER).
[3] *Id*. at 4.

3

## II.  DISCUSSION

### A. Governing Law

The present interpleader action is governed by the claims in the Underlying Action, a wrongful death claim by Truitt against Defendants, a wrongful death claim by Handy against Defendants, and a survival action by the Estate against Defendants. Based on these claims, the Court's analysis apportioning the $25,000 are governed by Delaware' Survival Statute, 10 *Del. C.* § 3701, and Delaware's Wrongful Death Statute, 10 *Del. C.* § 3724.

### B. Evidence of Estate's Medical Debt

10 *Del. C.* 3701 allows the Estate to recover "expenses incurred in endeavoring to be cured of such injuries" caused by the April 12th, 2018, accident.[4] It is uncontroverted that the Estate owes $68,031.60 in medical debt incurred in transit to and for care received at A.I. DuPont Childrens Hospital.[5]

### C. Evidence of Truitt and Handy's Mental Anguish

10 *Del. C.* § 3724(d)(5) allows this court to consider the mental anguish suffered by Truitt and Handy following the loss of G.M.T. in apportioning the $25,000 tendered by Progressive.[6] The testimony presented at trial demonstrates

---

[4] *Magee v. Rose*, 405 A.2d 143, 147 (Del. Super. Ct. 1979).
[5] Def. Truitt's Ex. 3.
[6] 10 *Del. C.* §3724(d)(5).

4

that both parents suffered mental anguish following the loss of G.M.T. After considering all the facts and circumstances presented, I find that Truitt has suffered greater mental anguish than Handy and as such will receive a greater share of the insurance proceeds for the reasons set forth below.

### 1. Evidence of Handy's Mental Anguish

Sadly, when questioned Handy could not recall G.M.T.'s year of birth, let alone her birthday.[7] Handy was incarcerated for most of the G.M.T.'s life over the course of which he only made a total of $1,022.70 in child support payments for G.M.T. to Truitt.[8] Despite being forgiven $4,446.85 in back child support by Truitt, Handy remains $4,322.62 in child support arrears to Truitt.[9] Although Handy denies it, Truitt alleged that the only reason Handy ever paid child support was to secure his release from prison. Stoic and seemingly uninterested, Handy testified via zoom from a jail cell in Maryland to being present at G.M.T.'s birth despite being incarcerated the day she was born.[10] These facts alone do not suggest that Handy did not suffer, he certainly did. However, these facts cannot be ignored by the Court.

---

[7] Trial Tr. at 28.
[8] Trial Tr. at 44; Def. Truitt Ex. 1.
[9] Trial Tr. at 44; Def. Truitt Ex. 1.
[10] Trial Tr. 25-31.

Evidence was presented at trial that showed following the accident Handy cried at G.M.T.'s hospital bed and took her loss "hard."[11]  Handy and each of his siblings testified that he abused drugs to cope with the loss of G.M.T.  Even Truitt admits that she believed Handy was hurt by the loss.  However, Handy did not suffer to the extent that Truitt, as G.M.T.'s primary caregiver, suffered.

### 2.  Evidence of Truitt's Mental Anguish

Truitt referred to G.M.T. as her "mini-me".[12]  Visibly upset and often breaking into tears, Truitt testified that she is devasted by G.M.T.'s loss and that she thinks about her every day.  Following her loss Truitt turned to faith attending groups and worshipping in some capacity multiple times each week.

Truitt worked full time to provide for G.M.T. and her other children.  Handy's family assisted in caring for G.M.T. when Truitt was at work, but Truitt was the only parent present for most of G.M.T.'s life.  In support of this, Truitt testified to instilling G.M.T. with the values she believed to be important.  She never missed a cheerleading event and took her to dance classes.  Truitt further testified that when G.M.T. was struggling in school she took her to additional academic classes daily and frequently attended meetings with her teachers.  Truitt and G.M.T.'s hard work paid off when G.M.T. made the Honor Roll, a ceremony Handy allegedly missed.

---

[11] Trial Tr. at 93-94; 112.
[12] Trial Tr. at 49.

Even Handy admits that Truitt was "always there" for their daughter.[13]  G.M.T. and Truitt shared a strong maternal-daughter bond, the loss of which caused Truitt significant mental anguish.

### D. Evidence of Funeral Expenses

10 *Del. C.* § 3724(d)(4) allows this Court to consider the "reasonable funeral expenses incurred…" in deciding how to allocate the funds tendered by Progressive.[14]  Truitt testified that through her position as a supervisor at Mountaire Farms she had life insurance for her children.  As a result, Prudential Life Group tendered $10,000 towards G.M.T.'s funeral expenses.[15]  The State of Delaware and Progressive also tendered $5,000 towards G.M.T.'s funeral expenses, leaving Truitt with a credit of $5,000 for funeral expenses not including the cost of G.M.T.'s headstone.[16]

Truitt agreed to reduce the arrears Handy owed her by $4,446.85 if he would help her with G.M.T.'s funeral expenses.[17]  Pursuant to this agreement Handy's arrears were reduced from $9,839.97 down to $5,504.12.[18]  Despite the large reduction in arrears, Truitt testified that Handy's only contribution to the funeral was

---

[13] Trial Tr. at 117.
[14] 10 *Del. C.* § 3724(d)(4).
[15] Def. Truitt's Ex. 2.
[16] *Id.*
[17] Trial Tr. at 45; 55-56.
[18] Def. Truitt's Ex. 1.

$200.00 towards G.M.T.'s $4695.00 headstone.[19]  Once again, it is this type of conduct on the part of Handy that the Court cannot ignore in apportioning the funds.

**THEREFORE, IT IS HEREBY ORDERED THIS 29th DAY OF JANUARY, 2024:**

1. Shequita Truitt shall be awarded $15,000.00 of the $25,000.00 tendered by Progressive.

2. Jeremie Handy shall be awarded $5,000.00 of the $25,000.00 tendered by Progressive.

3. The Estate shall be awarded $5,000.00 of the $25,000.00 tendered by Progressive.

4. Progressive is hereby released from any and all further liability concerning any claims arising out of the April 12th, 2018, accident.

/s/ *Mark H. Conner*
_____
Mark H. Conner, Judge

cc: Prothonotary

---

[19] Trial Tr. at 55-58.